UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

HENRY J MANCUSO                    :   CIVIL ACTION NO. 2:23-CV-01642


VERSUS                             :   JUDGE DAVID C. JOSEPH


SOUTHWEST LOUISIANA CHARTER
ACADEMY FOUNDATION INC., ET AL.    :   MAGISTRATE JUDGE LEBLANC


REPORT AND RECOMMENDATION


Before the court is a Motion to Dismiss filed by defendants Southwest Louisiana Charter

Academy Foundation, Inc. d/b/a Lake Charles College Prep and Lake Charles Charter Academy

Foundation, Inc. Doc. 13.  The motion is opposed by plaintiff Henry J. Mancuso. Doc. 18.  The

reply has been filed, making this motion ripe for resolution. Doc. 19.  The motion has been referred

to the undersigned for review, report, and recommendation in accordance with the provisions of

28 U.S.C. § 636.

For the reasons stated below, **IT IS RECOMMENDED** that the motion be **GRANTED**

and the Free Speech/Expression Retaliation claims be **DISMISSED**.  **IT IS FURTHER**

**RECOMMENDED** that the Whistleblower Retaliation claims be **REMANDED**.

I.
BACKGROUND

This case arises from the termination of plaintiff's employment with defendant Southwest

Louisiana Charter Academy Foundation, Inc. d/b/a Lake Charles College Prep ("LCCP"). Doc. 1,

att. 1.  Specifically, plaintiff claims his termination was a retaliatory action in response to plaintiff's

"reports of and objection to violations of Louisiana State law." *Id.* at ¶¶ 71, 88.  Plaintiff seeks to

recover for both monetary and non-pecuniary losses. *Id.* at ¶¶ 69–70, 86–87. The case was originally filed in state court but was later removed to this court on the basis of federal question jurisdiction. Doc. 1.

### A. *Factual Allegations*

Plaintiff began his employment with defendants in 2011. Doc. 1, att. 1, ¶ 6. In August 2014, defendant LCCP opened as a Type 2 charter school,[1] and plaintiff's at-will employment with LCCP began. *Id.* at ¶¶ 2.d, 7. Plaintiff later became a project manager for the 2022–2023 school year. *Id.* at ¶ 18. LCCP contracted with Charter Schools USA to be LCCP's charter management organization from 2014 through 2018. *Id.* at ¶ 8. During those four years, LCCP was underperforming "in areas requiring immediate student intervention." *Id.* at ¶ 9. Additionally, LCCP's school rating was an "F" for two of those years and was a "D" for the other two years. *Id.*

The Louisiana State Board of Elementary and Secondary Education ("BESE") required defendants to submit a school improvement plan for LCCP in 2017 and to replace Charter Schools USA with a new management organization for the 2018–2019 school year. *Id.* at ¶ 10. Defendants and McNeese State University entered into an Education Service Provider Agreement dated June 27, 2018, leading McNeese to replace Charter Schools USA. *Id.* at ¶ 11. This Agreement provided that defendants would be the employers of all teachers and staff at LCCP and that the school's staff would be responsible for decisions regarding facility maintenance and safety. *Id.* at ¶¶ 13–16. The Agreement also stipulated defendants would "assure that all provisions of the Louisiana Public Meetings law are met regarding the meetings of the Board of Trustees." *Id.* at ¶ 17. Defendants also agreed to be bound by Louisiana's Code of Governmental Ethics (La. R.S.

---

[1] A "Type 2 charter school" is a "new school or a preexisting public school converted and operated as the result of and pursuant to a charter between the nonprofit corporation created to operate the school and the State Board of Elementary and Secondary Education." La. R.S. 17:3973(2)(b)(ii).

41:1101 et seq.) while performing their obligations under the Agreement. *Id.* at ¶¶ 49, 74. During the term of the Agreement, LCCP's school rating rose to a "B." *Id.* at ¶ 12.

On September 21, 2022, the Board of Trustees went into Executive Session to discuss LCCP and its future management. *Id.* at ¶ 27. The Board excluded from the session all non-board members except two representatives from Charter Schools USA (Dr. Lonnie Luce and Dr. Pamela Quebodeaux). *Id.* at ¶ 28. The Board passed a motion and named Charter Schools USA the new management company, effective July 1, 2023. *Id.* at ¶ 29.

On September 28, 2022, plaintiff sent a letter to Dr. Holly Boffy (LCCP's BESE district representative) and Mr. James D. Garvey, Jr. (BESE's board president). *Id.* at ¶ 31. The letter expressed plaintiff's concerns about the propriety of the Executive Session. *Id.* BESE then required LCCP to re-vote on the selection of Charter Schools USA as the new management company. *Id.* at ¶ 32.

During the Board's next monthly meeting, held on October 24, 2022, the agenda included time for public comment on the collaboration with Charter Schools USA. *Id.* at ¶ 33. Plaintiff made public statements at the meeting regarding his beliefs and concerns about the propriety and validity of the decision made at the September session. *Id.* at ¶ 34. Plaintiff sent another letter to Dr. Boffy and Mr. Garvey three days later discussing the October meeting, plaintiff's concerns about the propriety of the meeting, and plaintiff's hope that the actions in the September session be voided. *Id.* at ¶ 35. At the next board meeting, the Board affirmed its prior decision to name Charter Schools USA as LCCP's new management company. *Id.* at ¶ 38. Subsequently, plaintiff drafted a letter, which LCCP's principal and several other employees signed, to the BESE Board expressing their concern about Charter Schools USA returning to the position of management company and asking the BESE Board to take action. *Id.* at ¶ 39.

Plaintiff received a December 9, 2022, email from Dr. Quebodeaux of Charter Schools USA terminating plaintiff's employment at LCCP. *Id.* at ¶ 40.  On December 15, 2022, plaintiff filed a grievance contesting his termination. *Id.* at ¶ 41.  At the January monthly board meeting, the Board ratified plaintiff's termination. *Id.* at ¶ 44.

### B. *Procedural Posture*

Plaintiff filed suit in the 14th Judicial District Court, Calcasieu Parish, Louisiana, for alleged violations of Louisiana law as well as plaintiff's constitutional[2] right to freedom of speech/expression. Doc. 1, att. 1.  Named as defendants were Southwest Louisiana Charter Academy Foundation, Inc. d/b/a Lake Charles College Prep and Lake Charles Charter Academy Foundation, Inc. *Id.*  Defendants later removed the matter to this court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. Doc. 1.  They claimed this court has federal question jurisdiction over this case because plaintiff asserted claims arising under the First Amendment of the United States Constitution. *Id.* at p. 2.

Defendants later filed the Motion to Dismiss currently before the court, asserting plaintiff's claim for "Free Speech/Expression Retaliation" should be dismissed because defendants, non-profit organizations that operate a Type 2 charter school, are not state actors and therefore cannot violate plaintiff's First Amendment rights. Doc. 13.  Plaintiff opposes the motion and insists defendants are public entities. Doc. 18.  Defendants disagree on reply. Doc. 19.

## II.
### LAW AND ANALYSIS

A defendant may seek dismissal of an action when the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  The court must accept all well-pled

---

[2] The petition cites both the First Amendment to the United States Constitution and Article I, section 7 of the Constitution of the State of Louisiana as sources of this right. Doc. 1, att. 1, ¶ 75.

facts as true and view them in the light most favorable to plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  But the court does not "'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" *Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1162–63 (5th Cir. 2021) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)).

To survive a Rule 12(b)(6) motion, the complaint must amount to more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007).  Thus, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. 1955). A facially plausible claim contains enough factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In considering a Rule 12(b)(6) motion, the court must limit itself to the contents of the complaint, including documents attached to or incorporated by the complaint, and matters of which judicial notice may be taken, including matters of public record. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

### *Free speech/expression retaliation claims*

The parties agree that plaintiff's federal law claims of freedom of speech/expression violations are raised pursuant to 42 U.S.C. § 1983.  Section 1983 provides a cause of action against "[e]very person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State*" deprives someone of a federal constitutional or statutory right. *Lindke v. Freed*, 601 U.S. 187, 194, 144 S. Ct. 756, 764 (2024) (brackets and emphasis in original) (quoting 42 U.S.C. §

1983).  Thus, section 1983 provides a cause of action only for acts attributable to a State. *Id.*  This provision does not protect against acts of private persons. *Id.* at 764–65.  Additionally, both the Free Speech Clause and the corresponding portion of Louisiana's state constitution explicitly protect against *government* intrusion upon the freedom of speech/expression. *See* U.S. Const. amend. I ("*Congress* shall make no law . . . abridging the freedom of speech.") (emphasis added); La. Const. art. I, § 7 ("No *law* shall curtail or restrain the freedom of speech . . . .") (emphasis added).  Thus, state action is necessary for a petition to state plausible claims for violations of these constitutional provisions.

Defendants claim they are private non-profit organizations that operate a Type 2 charter school, not state actors. Doc. 13.  They continue that because they are not state actors, they cannot violate plaintiff's rights to free speech/expression. *Id.*  Relying on a case from the United States District Court for the Eastern District of Louisiana, defendants note Louisiana Revised Statutes section 17:3996, titled "Charter schools; exemptions; requirements," requires charter schools to be organized and operate as self-governing nonprofit corporations and distinguishes charter schools from other public schools by exempting them from all public laws and regulations except as otherwise provided. Doc. 13, p. 9 (quoting *Advocates for Arts-Based Education Corp. v. Orleans Parish School Board*, No. 09-6607, 2010 WL 375223, at *3 (E.D. La. Jan. 26, 2010)).  The court finds the reasoning in *Advocates for Arts-Based Education Corporation* persuasive.

Plaintiff claims he "specifically plead that, based on Defendant's Agreement with McNeese State University, Defendant is, for all intents and purposes, a public employer." Doc. 18, pp. 1–2.  He asserts this singular claim makes dismissal under Rule 12(b)(6) improper. *Id.* at p. 2.  Plaintiff seems to assume the court must accept as true his conclusion that defendants are public entities.  The court does not presume legal conclusions, mere labels, conclusory statements, or

unsupported naked assertions are true. *Harmon*, 16 F.4th at 1162–63.  Whether state action exists

is "a question of law for the court," which involves a "necessarily fact-bound" inquiry.

*Blankenship v. Buenger*, 653 F. App'x. 330, 335 (5th Cir. 2016) (unpublished) (footnote citations

omitted).  *See Cuyler v. Sullivan*, 446 U.S. 335, 342 n.6, 100 S. Ct. 1708, 1715 n.6 (1980) (referring

to the existence of state action as a "question of law").  Thus, plaintiff's assertion that defendants

are state actors is a legal conclusion, which the court will not simply accept as true.

Moreover, the court notes plaintiff never "specifically plead" that the agreement between

defendants and McNeese made defendants a public employer.  None of the discussion about the

Agreement comes to this conclusion. Doc. 1, att. 1, ¶¶ 6–46.  Instead, plaintiff merely states "LCCP

is a tuition-free public charter school" without providing any support for this conclusion. Doc. 1,

att. 1, ¶¶ 48, 73.  Relying on this unsupported conclusion, plaintiff further concludes he "worked

for a public entity and was a public employee and was paid with public funds" *Id.* at ¶¶ 48, 73.

Plaintiff also argues defendants' choice to voluntarily bind themselves to comply with

Louisiana's Code of Governmental Ethics in the performance of the Agreement makes defendants

public entities. Doc. 18, pp. 3–4.  Plaintiff cites no support for this assertion.  The court finds this

argument—a private party's agreement to hold itself to a standard set for government actors makes

the private party a government actor—to be without merit.

Plaintiff also provides the court with a quote from the United States Court of Appeals for

the Fifth Circuit regarding private action that is fairly attributable to the State.  Plaintiff, however,

does not tie this quoted language to this case or in any way explain its applicability to the motion

*sub judice*. Doc. 18, p. 4.  Accordingly, the court will not consider the cited language in its analysis.

The Fifth Circuit has found that the Louisiana legislature intentionally chose to have charter

schools subject to private control and to insulate them from the political process. *Voices for*

*International Business and Education, Inc. v. National Labor Relations Board*, 905 F.3d 770, 778 (5th Cir. 2018).  The *Voices* court also noted the Louisiana Attorney General has concluded "a charter school is not a political subdivision of the state." *Id.* at 777 (quoting La. Atty. Gen. Op. No. 04-0317, 2004 WL 2843115, at *3 (Nov. 23, 2004)).  The same Attorney General opinion cited in *Voices* also provides, "A type 2 charter school is an independent public school that is operated pursuant to a charter between a nonprofit corporation and the Board of Elementary and Secondary Education. La. R.S. 17:3973. A charter school is not a political subdivision of the state . . . ." La. Atty. Gen. Op., 2004 WL 2843115, at *3.  Accordingly, the court sees no reason to accept plaintiff's suggestion that defendants, who operate a Type 2 charter school, are political subdivisions or state actors, and therefore, plaintiff cannot maintain plausible state or federal claims against them for violations of freedom of speech/expression.

### Supplemental jurisdiction over state-law claims

Should the district court adopt the recommendation above, the case will be comprised solely of state-law claims.  District courts "may decline to exercise supplemental jurisdiction over a claim" if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  Plaintiff's case came before this court pursuant to federal question jurisdiction over the "Free Speech/Expression Retaliation" claims, and the court was exercising supplemental jurisdiction over the state-law whistleblower claims [doc. 1, att. 1, ¶¶ 47–71].  However, once the federal-law claims are dismissed, there will be no remaining claims over which this court has original jurisdiction.[3]

Plaintiff asks that, should this court dismiss his freedom of speech/expression claims, the whistleblower claims be remanded to the 14th Judicial District Court. Doc. 18, pp. 5–6.

---

[3] Nothing in the record indicates the parties are of diverse citizenship, so this court cannot exercise diversity jurisdiction over the remaining claims. *See* 28 U.S.C. 1332.

Defendants do not respond to this request. *See* doc. 19. Because the remaining claims involve a purely state-law issue, the court agrees with plaintiff that the remaining claims should be remanded to state court.

### III.
#### CONCLUSION

For the reasons stated, **IT IS RECOMMENDED** that the Motion to Dismiss [Doc. 13] be **GRANTED** and that plaintiff's Cause of Action No. 2: Free Speech/Expression Retaliation be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that the remainder of the case, involving plaintiff's Cause of Action No. 1: Whistleblower Retaliation, be **REMANDED** to the 14th Judicial District Court, Calcasieu Parish, Louisiana.

Under the provisions of 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure, parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglas v. United Services Automobile Ass'n.*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 21st day of August, 2024.

_____
THOMAS P. LEBLANC
UNITED STATES MAGISTRATE JUDGE